712 A.2d 741

**BOROUGH OF POTTSTOWN and Pottstown Police Pension Fund, Appellants,**

**v.**

**PENNSYLVANIA MUNICIPAL RETIREMENT BOARD a/k/a Pennsylvania Municipal Retirement System of the Commonwealth of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Feb. 4, 1998.

Decided May 19, 1998.

606

Anthony C. Busillo, II, for Borough of Pottstown.

Joseph J. Schafle, Jr., Philadelphia, for Pottstown Police Pension Fund.

Letitia Ann Dyer, III, Harrisburg, for Pa. Mun. Retirement Bd.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice:

In this appeal, the Borough of Pottstown and the Pottstown Police Pension Fund challenge the Pennsylvania Municipal Retirement Board's denial of their claim to "excess interest" upon their withdrawal from participation in the Pennsylvania Municipal Retirement System.

After participating for eleven years in the Pennsylvania Municipal Retirement System (the "PMRS") pursuant to Arti-

cle IV of the Pennsylvania Municipal Retirement Law (the "PMRL"),[1] the Borough of Pottstown and members of its police department (collectively, the "Borough") sought to withdraw.[2] The Pennsylvania Municipal Retirement Board (the "Board"), the agency charged with the administration of the PMRS, approved the withdrawal, effective September 30, 1991. To discharge statutory obligations under the PMRL, the Board tendered to the Borough the sum of $5,489,136.00.

The Borough contended that it was entitled to a greater distribution and requested administrative review.[3] The Borough argued that, pursuant to Section 412 of the PMRL, 53 P.S. § 881.412, the Board should have tendered an additional $629,720.87 allocable to a "retired member's reserve account" [4] (the "additional reserve funds"), interest thereon at the legal rate, and $307,000.00 in "excess interest." [5]

Following a hearing, the hearing examiner issued proposed findings of fact and conclusions of law and recommended that the additional reserve funds be awarded in favor of the Borough; however, he recommended against awarding either legal interest on the additional reserve funds or excess interest. On consideration of exceptions filed by the Borough, the Board adopted the hearing examiner's opinion in all relevant

1. Act of February 1, 1974, P.L. 34, No. 15, §§ 101–501 (current version at 53 P.S. §§ 881.101–881.501).

2. According to the ordinance enacted by the Borough to authorize the action, the withdrawal was pursuant to the direction of the American Arbitration Association in connection with a proceeding involving the Borough and the Pottstown Police Officers' Association and was accomplished to permit the Borough to establish a pension plan under Act 600 of 1956, P.L. (1955) 1804 (current version at 53 P.S. § 767).

3. The Borough initially sought review in the Commonwealth Court's original jurisdiction; however, on preliminary objections filed by the Board, the Commonwealth Court transferred the matter to the Board.

4. The PMRL defines "retired member's reserve account" as "the account from which all retirement allowances shall be paid for superannuation and total disability retirement and voluntary and involuntary withdrawals." 53 P.S. § 881.102.

5. The PMRL defines excess interest as "the investment earnings on the fund in excess of that required for allocation to regular interest and expenses." 53 P.S. § 881.102.

respects.[6] Specifically, the denial of excess interest was predicated upon Board policy that such interest only becomes due to be credited to municipal and member accounts on December 31st of any given year, and a municipality that withdraws before that date will not receive excess interest for that year.

On appeal, the Commonwealth Court reversed the decision to deny legal interest on the additional reserve funds. The Commonwealth Court, however, affirmed the denial of excess interest.

Both the Borough and the Board filed timely petitions for allowance of appeal in this Court. We allowed only the Borough's appeal, limited to the following two issues: (1) did the Commonwealth Court correctly rule that the excess interest policies of the Board are interpretive rules that did not have to be promulgated in accordance with the Commonwealth Documents Law; and (2) assuming, *arguendo,* the Board's excess interest policies are determined to be interpretive rules, did the Commonwealth Court err in upholding them when these rules are unwise, violated legislative intent, constitute an unfair and unreasonable penalty, and work an unjust forfeiture?

■ Where an agency, acting pursuant to delegated legislative authority, seeks to establish a substantive rule creating a controlling standard of conduct, it must comply with the provisions of the Commonwealth Documents Law.[7] That statute sets forth formal procedures for notice, comment and ultimate promulgation in connection with the making of rules that establish new law, rights or duties. *See generally Pennsylvania Human Relations Comm'n v. Uniontown Area Sch. Dist.,* 455 Pa. 52, 80–81 n. 29, 313 A.2d 156, 171 n. 29 (1973). Such substantive regulations, sometimes known as legislative

6. The Board declined to adopt various findings that characterized the Board's interpretation of Section 412's requirements concerning the retired member's reserve account as unreasonable.

7. Act of July 31, 1968, P.L. 769, No. 240 (current version at 45 P.S. §§ 1102–1208). The short title of the law was eliminated by subsequent amendment; however, it remains the prevailing convention used for sake of reference.

rules, when properly enacted under the Commonwealth Documents Law, have the force of law, *Commonwealth v. DePasquale*, 509 Pa. 183, 187, 501 A.2d 626, 628 (1985) (citation omitted), and enjoy a general presumption of reasonableness. *See Commonwealth, Dep't of Environmental Resources v. Locust Point Quarries, Inc.*, 483 Pa. 350, 360, 396 A.2d 1205, 1210 (1979).

■ Agencies also devise rules and regulations that do not in themselves establish binding standards of conduct. Such pronouncements are valid as "interpretive rules" and need not be promulgated in accordance with the Commonwealth Documents Law to the extent that they merely construe a statute and do not improperly expand upon its terms. To be viable, an interpretive rule must genuinely track the meaning of the underlying statute, rather than establish an extrinsic substantive standard. *See Philadelphia Suburban Corp. v. Commonwealth, Bd. of Finance and Revenue*, 535 Pa. 298, 301, 635 A.2d 116, 118 (1993) (citations omitted).

■ In this case, the rule at issue is the Board's determination that excess interest is allowable for a given year only to the accounts of those municipalities that remain participants under Article IV of the PMRS on December 31st of that year. There is no dispute that this rule was not promulgated in accordance with the Commonwealth Documents Law and thus cannot be a legislative rule, nor is there any question that the Board has applied the rule in a manner that is binding upon all participating municipalities.[8] Our task, then, is to determine whether, as the Board contends, the rule tracks the

---

**8.** Because of the binding application of the Board's rule, it is not a "statement of policy," which is a third category of agency action under general administrative law. Statements of policy are agency pronouncements that declare its future intentions but which are applied prospectively on a case-by-case basis and *without* binding effect. *See, e.g., Pennsylvania Human Relations Comm'n v. Norristown Area Sch. Dist.*, 473 Pa. 334, 349–50, 374 A.2d 671, 678–79 (finding that guidelines promulgated by the Pennsylvania Human Relations Commission for school desegregation amounted to a statement of policy, because the guidelines were applied through agency adjudication). *Cf.* 45 P.S. § 1102(13)(defining "statement of policy" differently, to include certain interpretive rules).

statutory framework and thus is valid as an interpretive rule, or, conversely, if it is unwise or violates legislative intent.[9] *See Philadelphia Suburban,* 535 Pa. at 301–02, 635 A.2d at 118. While an administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to substantial deference, *Alpha Auto Sales v. Dep't of State,* 537 Pa. 353, 357, 644 A.2d 153, 155 (1994), the meaning of the statute ultimately is a question of law for the reviewing court. *Philadelphia Suburban,* 535 Pa. at 301–02, 635 A.2d at 118; *see also* 1 Pa.C.S. § 1921(c)(permitting courts, when construing a statute, to consider administrative interpretations only "[w]hen the words of the statute are not explicit").

At the core of the Board's interpretation is its assertion that it is statutorily required to allow excess interest "annually," and after payment of expenses. The Board derives this requirement principally from Sections 412 and 110 of the PMRL. Section 412 provides, in relevant part:

> [i]f the application [of a participating municipality to withdraw] is approved the withdrawing municipality shall be entitled to receive a net refund of the amounts *then standing to the credit of the municipality* in the member's account, the member's excess interest account, the municipal account and the retired member's reserve accounts of the system.

53 P.S. § 881.412 (emphasis added). Section 110 requires, *inter alia,* that the Board shall, after payment of expenses, *annually* allow excess interest to the credit of various accounts, including those accounts referenced in Section 412.

**9.** The legislative history of the PMRL does not provide specific guidance on this issue. The general purposes of the PMRS are to pool the financial resources and contributions of member municipalities for investment purposes, and to pay retirement allowances to officers, employees, fire fighters, and police officers of the municipalities. *See* 53 P.S. § 881.401 (setting forth Article IV statement of purpose); *see also Philadelphia v. District Council 33,* 528 Pa. 355, 376, 598 A.2d 256, 266 (1991)(Nix, C.J., dissenting). These broad purposes are as consistent with the concerns expressed by the Borough about sufficient funding for individual retirements as they are with the Board's concerns for the continued fiscal integrity of the PMRS.

The Borough urges an interpretation of these provisions that would permit crediting a withdrawing municipality with all appreciation in value that can be attributed to funds residing in municipal and member accounts. The Borough implicitly suggests that the word "annually" not be given literal effect in determining when crediting of accounts is to occur under Section 110; or that the legislature intended a process for the crediting of accounts in Section 412 different from the crediting that occurs under Section 110.

■■■ We are obliged, however, to construe a statute according to its plain meaning and in such a manner as to give effect to all of its provisions. 1 Pa.C.S. § 1921(a), (b). The legislature's use of the term "annually" in the final sentence of Section 110, in context, directs nothing more or less than the yearly crediting of excess interest to the accounts of municipalities and members.[10] Moreover, parts of statutes must be construed together if possible when they relate to the same persons or things. *See* 1 Pa.C.S. § 1932 (requiring application of the doctrine of *in pari materia* in statutory construction). The subject of excess interest and the process of crediting it to municipal and member accounts are integral to both Sections 412 and 110, and the statutory provisions can be harmonized only by treating these internal concepts consistently.

With these precepts in mind, Sections 110 and 412, read in conjunction, support the Board's rule governing the allowance of excess interest to a withdrawing municipality. We have determined that Section 110 directs that the Board *annually* allow available excess interest *to the credit* of participating municipalities and members. Section 412 clearly directs that a withdrawing municipality receive only such amounts that are standing *to the credit* of its member accounts as of the date the Board approves the application for withdrawal. Given the terms used by the legislature, it cannot be fairly said that

10. We note that Section 110 similarly provides for regular interest to be allowed to the credit of municipalities and contributors on an annual basis, and it appears from the record that the Board may actually credit accounts with regular interest more frequently. *See* R. at 126a. The record is ambiguous on this point, and the Borough did not raise any such inconsistency among its arguments.

amounts which are not yet due to be credited to municipality and member accounts under Section 110 must be "standing to the credit" of the municipality for purposes of distribution under Section 412 at the time of its withdrawal.[11]

Notably, where the legislature specifically intends to require an agency to credit interest more frequently than on a yearly basis, it has not hesitated to so provide. For example, under the Employee Retirement System established by the Second Class County Code,[12] a withdrawing contributor is entitled to interest on refunded contributions calculated "through the month of refund." 16 P.S. § 4714. In the absence of specific legislative direction, we cannot engraft a similar directive into the terms of Article IV of the PMRL.

The Borough contends that the interpretation applied by the Board results in unfair consequences. For example, a municipality that withdraws after the close of business on December 31st of a given year will receive excess interest, whereas a municipality that withdraws one day earlier will be denied excess interest. Additionally, the Board freely acknowledges that a municipality that *joins* the PMRS at mid-year will receive a pro-rated share of excess interest, so long as it remains a member on December 31st. The Borough contends that there is no logical reason why a municipality that *withdraws* at mid-year should not be entitled to the same form of prorated distribution for the period of its participation. Centrally, the Borough argues that application of the Board's construction of the PMRL results in an unjust forfeiture.

The Borough's arguments are not so compelling as to require a court to override the plain meaning of the statute. The timing of the withdrawal from the PMRS is a matter over which a withdrawing municipality possesses a degree of con-

11. Annual allowance and crediting of excess interest is also consistent with Section 112 of the PMRL, which provides, *inter alia*, that, for calendar years 1991 through 1994, the Board must pay administrative expenses not covered by assessments from the fund of excess interest. 53 P.S. § 881.112.

12. Act of July 28, 1953, P.L. 723 (current version at 16 P.S. §§ 3301–6302).

trol, and municipalities are on notice of the annual crediting of excess interest.[13] The fact that a municipality joining at mid-year receives excess interest, while one withdrawing at mid-year does not, is controlled by the circumstance that only the former is a participant as of the date crediting occurs.[14]

The Borough's claim of an unjust forfeiture is also not persuasive. Numerous forms of investment carry a rate of return that is not controlled entirely by the actual appreciation of contributions, but rather, is conditional upon the occurrence of enumerated circumstances.[15] In such instances, conditional portions of the return are not entitlements until such time as the prerequisite conditions are satisfied. Moreover, in this case, the Borough received multiple benefits for participation in the PMRS, including a guaranteed fixed rate of return on contributions in the form of regular interest and assumption by the PMRS of various liabilities that otherwise would have been obligations of the Borough. The Borough offered no evidence to suggest that the difference between the amount it received from the Board upon withdrawal from the PMRS and the appreciated value of its contributions was not offset by

13. While the statute does not specify December 31st as the date on which excess interest becomes due, the Board's selection of that date is merely a mechanism for applying Section 412 and is not an improper expansion upon it; rather, it is consistent both with the PMRL and the Board's fiscal operations (the Board conducts its accounting on a fiscal year basis, and its fiscal year is the calendar year). *See generally California ex rel. State Water Resources Control Bd. v. Federal Energy Regulatory Comm'n,* 966 F.2d 1541, 1544 (9 th Cir.1992)(characterizing as a valid interpretive rule a policy promulgated by the Federal Energy Regulatory Commission that governed the timing of commencement of a one year period for waiver of a procedure provided under the federal Clean Water Act). In fact, the December 31st date is set forth by way of example in the manual distributed to participating municipalities. While the Borough complains about the adequacy of such notice, interestingly, nowhere in its brief does it contend that its personnel were not actually aware of the rule.

14. While we do not specifically attribute this result to an intent on the part of the legislature to provide a dividend to municipalities that continue to participate in the PMRS, as does the Board, it certainly is possible that the legislature so intended.

15. Savings accounts tying interest rates to the balance on hand are a simple example.

such benefits.[16]

 The Board emphasizes that performing interim calculations of excess interest for the benefit of withdrawing municipalities would result in consequences detrimental to the PMRS. For example, the PMRS would incur actuarial costs for which the PMRL may not provide a mechanism for recoupment.[17] Additionally, the Board indicates that annual calculation of excess interest serves to smooth market fluctuations and to discourage sophisticated municipalities from attempting to enter and exit the PMRS based upon the current performance of the market. While these considerations may indeed support the Board's rule governing excess interest, and while the Board is entitled to a degree of deference as to technical matters that are uniquely within its area of expertise, *see Philadelphia Suburban*, 535 Pa. at 301–02, 635 A.2d at 118 (citing *Uniontown*, 455 Pa. at 77–78, 313 A.2d at 169), the rule derives its validity in the first instance from the plain meaning of the statute.

This case is distinguishable from *Lopata v. Commonwealth, Unemployment Compensation Bd. of Review*, 507 Pa. 570, 493 A.2d 657 (1985), cited by the Borough, in which this Court held that a formula used by the Unemployment Compensation Board of Review to definitively calculate "credit weeks" in determining eligibility for benefits was invalid as an improperly adopted legislative rule. *Id.* at 579, 493 A.2d at 662. In *Lopata*, unlike the present case, the rule at issue contained provisions that modified substantive rights by expanding upon the plain meaning of the statute.[18]

---

**16.** Indeed, the Board's decision to allow the additional reserve funds provided the Borough with a benefit that was $629,720.87 greater than the value of contributions to the retired member's reserve account, distribution on the account being tied to existing liabilities of the pension fund, rather than to contributions.

**17.** The Board adopted the hearing examiner's specific finding that "[i]t would disrupt the actuarial soundness of the PMRS if PMRS has to make interim types of actuarial calculations of the amount of excess interest that can be allocated to member municipalities in addition to the year-end calculation."

**18.** The rule directed that, when a calendar week overlapped two calendar quarters, the credit week fell into the quarter during which four or

Whether the Board, pursuant to the delegated grant of rulemaking authority from the legislature, could promulgate substantive rules providing for more frequent crediting of excess interest is an issue that is not before us.[19] *See generally* 53 P.S. § 881.104(10)(establishing the Board's rulemaking authority). Rather, we hold only that the Board's rule is a valid interpretive rule, because: 1) Section 110 does not direct the crediting of excess interest to municipality and member accounts other than annually; 2) Section 412 does not direct distribution of excess interest to a withdrawing municipality such as is not credited (or due to be credited) to the relevant municipal and member accounts; and 3) the Board's rule denying excess interest to a municipality withdrawing prior to December 31st of a given year tracks these provisions of the PMRL.

The decision of the Commonwealth Court is affirmed.

more of its days fell, regardless of whether the claimant earned fifty dollars during the portion of the week that fell into another quarter.

**19.** Notably, the Board has exercised its rulemaking authority under the PMRL in enacting regulations that essentially mirror the provisions of Section 412. *See* 16 Pa.Code §§ 83.14, 87.12.