**FIDELITY & GUARANTY INSURANCE COMPANY,**
Petitioner

v.

**BUREAU OF WORKERS' COMPENSATION (Community Medical Center), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2010.

Decided Oct. 29, 2010.

Charles S. Katz, Jr., West Chester, for petitioner.

Thomas J. Kuzma, Deputy Chief Counsel, and Deborah J. Schwartz, Asst. Counsel, Harrisburg, Amicus Curiae, for respondent Bureau of Workers' Compensation.

William J. Hall, Jr., Dunmore, for respondent Community Medical Center.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Fidelity & Guarantee Insurance Company (Insurer) petitions for review of an order of a hearing officer (Hearing Officer) of the Bureau of Workers' Compensation Fee Review Hearing Office (Bureau), which determined that Community Medical Center's (Provider) Application for Fee Review was timely filed within ninety (90) days of the original billing date pursuant to Section 306(f.1)(5) of the

Workers' Compensation Act (Act)[1] and 34 Pa.Code § 127.252(a) (the Regulation).[2] For the reasons set forth below, we affirm.

On December 9, 2006, Janice Matthews (Claimant) sustained work-related injuries when an order picker she was working on fell over while she was counting stacked inventoried items located on an end cap rack. (Reproduced Record (R.R.), 26a, 178a.) Claimant was taken by Life Flight helicopter to Provider's trauma center and was admitted to Provider. (*Id.* at 64a–68a.) Provider treated Claimant between December 9, 2006, and December 19, 2006, for her injuries. (*Id.* at 128a.)

■ On January 18, 2007, Provider mailed a clean bill[3] to Gallagher Bassett Service, a third-party administrator for Insurer, in the amount of $104,137.33, relating to the charges for Claimant's care between December 9, 2006, and December 19, 2006. (*Id.* at 156a–157a.) Insurer performed a forensic audit of Provider's bill and determined that it did not meet the state or federal guidelines as a trauma. (*Id.* at 196a.) In accordance with the results of the audit, on February 21, 2007, Liberty Asset Recovery, LLC, on behalf of Insurer, mailed a check to Provider in the amount of $21,327.69 for payment of the service period at issue, together with a notification of disputed treatment dated February 7, 2007.[4] (*Id.* at 193a–195a.) Provider disputed the amount of Insurer's $21,327.69 payment and filed an application for fee review (Application for Fee Review) with the Bureau on the eighty-fifth (85) day after the original billing date,[5] claiming Provider was entitled to the

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5). Section 306(f.1)(5) provides:

 The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the *original billing date* of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision. 77 P.S. § 531(5) (emphasis added).

2. 34 Pa.Code § 127.252(a) provides that:

 Providers seeking review of fee disputes shall file the original and one copy of a form prescribed by the Bureau as an application for fee review. The application shall be filed no more than 30 days following notification of a disputed treatment or 90 days following the original billing date of the treatment which is the subject of the fee dispute, whichever is later. The form shall be accompanied by documentation required by § 127.253 (relating to application for fee review—documents required generally).

3. A "clean bill" is a bill submitted on the proper forms. *Seven Stars Farm, Inc. v. Workers' Comp. Appeal Bd. (Griffiths),* 935 A.2d 921, 923 (Pa.Cmwlth.2007).

4. Insurer contests payment at a "usual and customary rate" under the trauma provisions of Section 306(f.1)(1) of the Act.

5. The original billing date is the date of submission of a clean bill. *Nationwide Mut. Fire Ins. Co. v. Bureau of Workers' Comp. Fee Review,* 981 A.2d 366, 369 (Pa.Cmwlth.2009).

$82,809.64 remaining balance. (*Id.* at 191a–192a.) The Bureau received Provider's Application for Fee Review on April 13, 2007. (*Id.* at 129a.) The Bureau issued an administrative decision, mailed on July 9, 2007, granting Provider's Application for Fee Review and determining the amount Insurer owed Provider to be $82,809.64. (*Id.* at 183a.) Insurer requested a hearing from the Bureau's Fee Review Section, and a *de novo* hearing was held on July 22, 2008. (Hearing Officer's decision, dated August 10, 2009.)

After the hearing, the Hearing Officer determined that the date of billing submission by Provider for purposes of Section 306(f.1)(5) of the Act was January 18, 2007, and the date of Insurer's notification of dispute of Provider's treatment was February 21, 2007. (*Id.*) The Hearing Officer then concluded that Provider's Application for Fee Review, which was received by the Bureau on April 13, 2007, was timely filed within the ninety (90) day period provided by Section 306(f.1)(5) of the Act. (*Id.*) Insurer then petitioned this Court for review.[6]

On appeal,[7] Insurer argues that the Bureau lacks jurisdiction over the fee dispute because Provider failed to file its Application for Fee Review within thirty (30) days of the disputed treatment, as Insurer claims is required by Section 306(f.1)(5) of the Act. Insurer also challenges the validity of the Regulation, arguing that the Regulation improperly extends the filing period for an application for fee review to ninety (90) days following the original billing date, which is contrary to the plain language of the Act.

First, Insurer contends that Section 306(f.1)(5) of the Act describes a two-pronged limitations period for filing an application for fee review. The first prong requires a provider to file an application for fee review within thirty (30) days following notification of disputed treatment. The second prong of the section requires filing of an application for fee review within ninety (90) days following the original billing date. Insurer contends that the latter prong (90 days) is applicable only in the absence of a fee dispute. Insurer argues that the Hearing Officer's interpretation of Section 306(f.1)(5) of the Act ignores the existence of the first prong of the limitations period, which requires a Provider to file an application for fee review within thirty (30) days of receiving notification of disputed treatment.[8]

When interpreting a statute, this Court is guided by the Statutory Construction

---

**6.** The Bureau filed an Amicus Curiae brief in support of Petitioner.

**7.** This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

**8.** In further support of this position, Insurer argues if an insurer fails to provide notice of dispute within thirty (30) days of billing, Sec-

tion 306(f.1)(5) of the Act requires the insurer to pay the bill in full, subject to fee cap. Insurer maintains that as a result of its obligation to act within thirty (30) days, to allow a provider to file an application of fee review within ninety (90) days of the notification of disputed treatment would, in effect, nullify entirely the provision limiting the time period to thirty (30) days following notification of dispute. Put another way, Insurer argues if a provider may file an application for fee review as late as ninety (90) days after the date of the original bill, then the first prong of Section 306(f.1)(5) of the Act, limiting the period to thirty (30) days following notification of dispute, would never come into play.

Act of 1972, 1 Pa.C.S. §§ 1501–1991, which directs that "the object of all interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). "When words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The words and phrases of a statute must be "construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). This means that no provision shall be "reduced to mere surplusage." *Walker,* 577 Pa. at 123, 842 A.2d at 400. Finally, when ascertaining the intent of the General Assembly, this Court is mindful of the general command to presume that the General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

Here, the Hearing Officer concluded that the conjunction "or," as used within the phrasing of Section 306(f.1)(5) of the Act establishing the time period for filing an application for fee review, must be interpreted according to its common meaning which designates an alternative. (Hearing Officer's decision, dated August 10, 2009.) The Hearing Officer's interpretation allows a provider to file an application for fee review within the thirty (30) days following dispute notification or, alternatively, within the ninety (90) day time period following the original billing date of the treatment. This interpretation is supported by this Court's decision in *Harburg Medical Sales Company v. Bureau of Workers' Compensation (PMA Insurance Company),* 784 A.2d 866 (Pa.Cmwlth.2001) (*Harburg PMA* ), in which we determined that a provider must file an application for fee review no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of the treatment, whichever is later. The Court in *Harburg (PMA)* concluded that although the time limitation found in Section 306(f.1)(5) of the Act may have passed based on the original billing date, if the insurer denies payment of a resubmitted bill, a provider still has thirty (30) days following the notification of an insurer's denial of the resubmitted bill to file an application for fee review. *Id.* at 870.

Moreover, this Court's interpretation in *Harburg (PMA)* of the same language in question recognizes that, contrary to the argument advanced by Insurer, a provider under certain circumstances may file an application for fee review more than ninety (90) days after the original billing date when the provider receives notification of dispute, giving effect to the first prong of Section 306(f.1)(5) of the Act. If an insurer disputes payment of a resubmitted bill, the provider still had thirty (30) days following the notification of the dispute to seek review of the fee dispute. *Harburg (PMA),* 784 A.2d at 870, n. 5. This Court, thus, has determined that if the Act's ninety (90) day time limitation has passed, the provider still has thirty (30) days following the insurer's notification of the denial of the resubmitted bill to file an application for fee review. *Id.* Thus, Insurer's argument that the Hearing Officer's interpretation would in all instances nullify the thirty-day time period for filing is without merit. Moreover, we recognized in *Harburg (PMA)* that "any other interpretation would leave the provider without any recourse to seek payment for a disputed treatment if the provider is barred from

resubmitting a bill that has gone through the fee review process and denied on the basis of failure to comply with the reporting requirements."[9] *Id.*

◼ Upon review, we agree with the Hearing Officer's conclusion that the language of Section 306(f.1)(5) of the Act may be reasonably interpreted to provide two distinct alternative time periods for filing an application for fee review: (1) thirty (30) days following notification of a disputed treatment, OR (2) ninety (90) days following the original billing date. Such an interpretation accords the conjunction "or" its common and approved meaning as designating alternatives. It also gives effect to all of the words and phrases of the statute, without rendering any words or phrases as mere surplusage because the interpretation will not nullify either time period for filing. Such an interpretation also does not require additional language (such as "in the absence of a dispute") to the second prong of Section 306(f.1)(5) of the Act in order to convey the intent of the General Assembly.

◼ Next, Insurer argues that the Bureau exceeded its authority when it included the language "whichever is later" in the Regulation because regulations may not amend a statute. Specifically, Insurer

contends that the addition of the "whichever is later" language results in the ninety (90) days always being longer than the thirty (30) days because an insurer must always pay, deny, or dispute a bill within thirty (30) days following its receipt. As discussed above, we reject Insurer's premise that the addition of the language in the Regulation nullifies the first prong of Section 306(f.1)(5) of the Act.[10]

◼ As to the validity of the regulation, Section 306(f.2)(7) of the Act, 77 P.S. § 531.1(7), specifically provides, that "[t]he department shall have the power and authority to promulgate, adopt, publish and use regulations for the implementation of this section." The addition of "whichever is later" language found in the Regulation was adopted pursuant to the Department's delegated legislative power. Section 306(f.2)(7) of the Act. "Where an agency, acting pursuant to delegated legislative authority, seeks to establish a substantive rule creating a controlling standard of conduct, it must comply with the provisions of what is commonly referred to as the Commonwealth Documents Law."[11] *Borough of Pottstown v. Pa. Mun. Ret. Bd.*, 551 Pa. 605, 609, 712 A.2d 741, 743 (1998). That statute sets forth formal procedures for notice, comment, and ultimate promulgation in connection with the making of

---

9. Additionally, we note that the Bureau will return an application for fee review that is prematurely filed by a provider when the insurer has filed a request for utilization review of the treatment. *Harburg Med. Sales Co. v. Bureau of Workers' Comp. (Emp'rs Mut. Casualty Co.),* 911 A.2d 214, 216–17 n. 7 (Pa. Cmwlth.2006).

10. We find no case law establishing that an insurer *must* dispute within thirty (30) days of receiving the bill or be barred from raising any "defense" or "objections" to the bill. This Court has determined that an employer is not liable to pay for medical treatment for an injured employee until the periodic medical reports are filed, *Catholic Health Initia-*

*tives v. Heath Family Chiropractic,* 720 A.2d 509 (Pa.Cmwlth.1998), which would relieve an insurer of an obligation to pay or deny or dispute within thirty (30) days of receipt of a bill. That is not to say that an insurer's failure to timely pay and reimburse a provider for claimant's work-related medical expenses, as a result of an excessive or unreasonable delay, will not rise to the level of a violation of the Act, supporting a penalty award. *Hough v. Workers' Comp. Appeal Bd. (AC & T Co.'s),* 928 A.2d 1173 (Pa.Cmwlth.2007), *appeal denied,* 596 Pa. 710, 940 A.2d 367 (2007).

11. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602.

rules that establish new law, rights or duties. *Uniontown Area Sch. Dist., v. Pa. Human Relations Comm'n,* 455 Pa. 52, 80–81 n. 29, 313 A.2d 156, 171 n. 29 (1973), *subsequent proceeding following remand,* 480 Pa. 398, 390 A.2d 1238 (1978), *overruled on other grounds, Cmwlth. v. Scranton Sch. Dist.,* 510 Pa. 247, 507 A.2d 369 (1986). Such substantive regulations, sometimes known as legislative rules, have the force of law when properly enacted under the Commonwealth Documents Law. *Id.* at 76, 313 A.2d at 169.

 This Court has differentiated a legislative regulation from an interpretive regulation, stating that a legislative regulation is substantive and creates a new controlling standard of conduct while the interpretive regulation does not. *Borough of Pottstown,* 551 Pa. at 609–610, 712 A.2d at 743. Generally, a legislative regulation establishes "a substantive rule creating a controlling standard of conduct." *Id.* at 609, 712 A.2d at 743. A legislative regulation is valid if adopted pursuant to delegated legislative power in accordance with the appropriate administrative procedure, and if it is reasonable. *Id.,* 712 A.2d at 743; *see also Uniontown,* 455 Pa. at 76, 313 A.2d at 169 (legislative regulation valid if adopted within ambit of agency's authority as granted by legislature, issued pursuant to proper procedure, and is reasonable).[12]

In this case, the Department enacted the Regulation to provide guidance as to Section 306(f.1)(5) of the Act. The Regulation contains identical language to Section 306(f.1)(5) of the Act with the addition of the phrase "whichever is later." The additional language "whichever is later" sets forth a standard of conduct for timely fil-

ing. The Regulation appears to have been adopted pursuant to delegated legislative power and in accordance with the appropriate administrative procedure. Therefore, as long as the Regulation is reasonable, the Regulation may be substantive and may create a new controlling standard of conduct. The provisions of the Regulation in question appear to be reasonable for two reasons: (1) the provisions are consistent with the statutory language set forth in Section 306(f.1)(5) of the Act; and (2) the provisions serve the purposes of the Department as outlined. We conclude, therefore, that the Regulation is a valid legislative regulation, and we reject Insurer's argument to the contrary.

For the above reasons, and in light of the alternative filing periods, we conclude that Provider's Application for Fee Review was timely, as it was filed within ninety (90) days of the original billing date.

Accordingly, we affirm the decision of the Bureau.

### ORDER

AND NOW, this 29th day of October, 2010, the order of the Bureau of Workers' Compensation Fee Review Hearing Office is hereby AFFIRMED.

---

**12.** By comparison, an interpretive regulation merely construes and does not expand upon the terms of a statute. *Borough of Pottstown,* 551 Pa. at 610, 712 A.2d at 743. An interpretive regulation is valid if it "genuinely track[s] the meaning of the underlying statute." *Id.,* 712 A.2d at 743. If the interpretive regulation "is unwise or violative of legislative intent, courts disregard [it]." *Uniontown,* 455 Pa. at 78, 313 A.2d at 169.