DISSENTING OPINION BY
Judge McCullough.
The Majority provides thoughtful and reasoned discourse with respect to the issue presented, but, possessing a different viewpoint, I respectfully dissent. In my view, the Majority conflates the terms “professional land surveyor” and an “engineer” set forth in the Engineer, Land Surveyor and Geologist Registration Law (Law)[1] and redefines what an “engineering land survey” is by transposing onto it the statutory definition and concepts of the “practice of engineering.” (See Maj. op. at 331-32.)
In 2006, Central Electric Cooperative, Inc. (CEC), a rural electric distribution cooperative, contracted with Southeastern Reprographics, Inc., now known as The Davey Resource Group (DRG), to “go out in the field” and locate electric equipment that CEC owned, including transmission poles, distribution poles, security and street light poles, pad-mounted equipment, regulators and meters. As the Majority notes, this was a tremendous task in terms of both physical locale (100 square miles of land area) and the amount of equipment to be located (100,000 different location points). Using maps, mapping grade GPS/ GIS téchnology, and mathematical calculations, DRG’s field staff geographically located CEC’s assets/equipment to sub-meter accuracy and transposed them onto a base map. On its website, DRG represented that it has provided mapping and field inventory services to utility companies on a national basis for over twenty years and that it can locate assets/equipment within a minimal margin of error. Id. at 325-26.
Section 2 of the Law contains the relevant statutory terms. 63 P.S. § 149. In pertinent part, the Law states that the “Practice of Engineering ” includes “the application of the mathematical and physical sciences for the design of public or private buildings, structures, machines, equipment, processes, works or engineering systems” and references “engineering surveys.” 63 P.S. § 149(a)(1). On the other hand, the Law describes the “Practice of Land Surveying,” 63 P.S. § 149(d), and provides that “Engineering Land Surveys ” include “the determination of the configuration or contour of the earth’s surface, or'the position of fixed objects thereon or related thereto by means of measuring lines and angles and applying the principles of mathematics, photogramme-try or other measurement methods .... ” 63 P.S. § 149(j)(ii) (emphasis supplied).
Crediting expert testimony, the State Registration Board for Professional Engineers, Land Surveyors and Geologists (Board) concluded that DRG offered to perform and performed engineering land surveys under section 2(j)(ii) without proper licensure in violation of the Law. (Board’s decision at 14-21.) I can discern no abuse of discretion or error of law in the Board’s determination. To me, it is readily apparent that DRG’s surveys located “fixed objects” and used principles of mathematics “or other measurement methods” to locate CEC’s assets/equipment. 63 P.S. § 149(j)(ii).
Notably, the Board is one of technical expertise and this Court should be wary to *335 upset its legal determination especially where, as here, the Board’s findings of fact are supported by substantial evidence and those findings fit squarely within the pertinent statutory language. See Borough of Pottstown v. Pennsylvania Municipal Retirement Board, 551 Pa. 605, 712 A.2d 741, 744 (1998). In this vein, I note that the Law is remedial legislation designed “to safeguard life, health or property and to promote the general welfare,” section 3(a) of the Law, 63 P.S. § 150, and, therefore, must be liberally construed to achieve this object by requiring licensure. See O’Rourke v. Commonwealth, 566 Pa. 161, 778 A.2d 1194, 1203 (2001). As the Board stated in its decision, “[wjhoever is not qualified to practice surveying endangers the public by practicing land surveying.” (Board’s decision at 22-23.) In this case, CEC shared DRG’s maps with PA One Call and the EMS services for 6 or 7 different counties, id. at 21, and one can only imagine the potential danger of not properly locating electrical infrastructure such as transformers and distribution poles.
I believe that the flaw in the Majority’s approach is that it overly focuses on the “practice of engineering” and its embodiment of the concept of a “design project” to conclude that an “engineering land survey” must be “performed in the context of or in connection with an engineering design project.” (Maj. op. at 332) (emphasis supplied). Indeed, an “engineering survey” for purposes of section 2(a)(1) of the Law is completely divorced, and contains drastically different language, from an “engineering land survey” under section 2(j) of the Law — the latter of which has nothing to do with an engineering design project and instead focuses solely on locating fixed objects on the earth’s surface. See 63 P.S. § 149(a)(1) (Practice of Engineering),[2] and compare with 63 P.S'. § 149(j)(ii) (Engineering Land Surveys).[3] Essentially, the Majority’s interpretation has the effect of rewriting the Law or at least impermissibly intermingling two distinct subsections within the Law. The Majority’s interpretation also fails to recognize that, by definition, a professional land surveyor is not an engineer and cannot engage in the practice of engineering as that term is used in section 2(a)(1) of the Law. See 63 P.S. § 149(f). Consequently, there is no-legal or interpretative basis for the Majority to import section 2(a)(1) of the Law into section 2(j)(ii) of the Law.
Finally, I do not share the Majority’s concern that the Board’s decision would lead to an absurd result in that “the use of GPS by a taxi driver to locate the address of a particular building would constitute an engineering land survey.” (Maj. op. at 332.) In such a circumstance, the taxi driver is not creating a “survey” as that term is commonly understood and is not confirming or representing to others that a particular address is located on a certain latitudinal and longitudinal plane.
For these reasons, I would affirm the Board’s order concluding that DRG offered to perform and performed profes *336 sional services without proper licensure under the Law. Hence, I respectfully dissent.

. The Act of May 23, 1945, P.L. 913, as amended, 63 P.S. §§ 148-158.2.

. ''[T]he application of the mathematical and physical sciences for the design of public or private buildings, structures, machines, equipment, processes, works or engineering systems, and the consultation, investigation, evaluation, engineering surveys, construction management, planning and inspection in connection therewith ....” 63 P.S. § 149(a)(1) (emphasis supplied).

. "[T]he determination of the configuration or contour of the earth’s surface, or the position of fixed objects thereon or related thereto by means of measuring lines and angles and applying the principles of mathematics, pho-togrammetry or other measurement methods. ...” 63 P.S. § 149(j)(ii).