**[J-62-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| DANIEL HARMON, | : | No. 37 EAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on 06- |
| | : | 07-2017 at No. 787 CD 2015 affirming |
| v. | : | the decision entered on 4-15-2015 by |
| | : | the Unemployment Compensation |
| | : | Board of Review at No. B-577458. |
| UNEMPLOYMENT COMPENSATION | : | |
| BOARD OF REVIEW, | : | |
| | : | |
| Appellee | : | ARGUED:  September 25, 2018 |

*Justice Dougherty delivers the opinion of the Court as to Parts I, III and IV and an opinion joined by Justices Baer and Todd as to Part II.*

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  April 26, 2019**

**I. Background**

We granted discretionary review to determine whether the Commonwealth Court erred in holding appellant Daniel Harmon was disqualified from receiving unemployment compensation benefits pursuant to Section 402.6 of the Unemployment Compensation Law (the Law), 43 P.S. §802.6(a) ("[a]n employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction").  We hold appellant, who was serving a sentence of incarceration on weekends only, was not disqualified from receiving unemployment compensation benefits, and we therefore reverse the order of the Commonwealth Court.

Appellant was a part-time employee at Brown's Shop Rite beginning on February 14, 2013. N.T. 9/24/14 at 4. On December 18, 2013, he was convicted of driving with a suspended license[1] and sentenced to a term of 60 days' imprisonment to be served on 30 consecutive weekends, beginning on March 14, 2014 and ending on August 7, 2014. *Id.* at 7-8. Appellant's employment with Brown's Shop Rite was terminated on March 24, 2014 due to a violation of company policy, which was unrelated to his incarceration. *Id.* at 4. He then filed for benefits and received them for the week ending March 29, 2014 through the week ending July 26, 2014. *Id.* at 7. This period included weeks when appellant was serving his sentence of weekend incarceration.

On August 8, 2014 (after appellant had completed serving his sentence), Andrea Quirk, an Unemployment Compensation Claims Examiner from the Erie Unemployment Compensation Service Center (Service Center), conducted an investigation based on information received from "the cross match system" to determine whether appellant was incarcerated due to a conviction in the Philadelphia County Prison System when he was receiving benefits. *Id.* at 1, 6. Ms. Quirk did so because Section 402.6(a) of the Law provides "[a]n employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction." *Id.* at 7; 43 P.S. §802.6(a). Upon Ms. Quirk's determination appellant had received benefits in weeks "during which" he was incarcerated, appellant was ordered to refund the $2,925.00 in benefits he had received. It was also determined appellant's failure to disclose his incarceration himself resulted in fault overpayment under Section

---

[1] 75 Pa.C.S. §1543(b)(1).

804(a) of the Law, 43 P.S. §874(a), such that he was assessed a penalty of $483.75 and disqualified from receiving benefits for an additional 17 penalty weeks.[2]  *Id.*

On appeal, Unemployment Compensation Referee Debbie Wallace held a hearing on September 24, 2014.  *Id.* at 1.  Ms. Quirk testified appellant received an Unemployment Compensation Handbook which clearly states a claimant is ineligible for benefits for weeks during which he is incarcerated due to a conviction, and appellant's failure to disclose his incarceration amounted to knowingly withholding information.  *Id.* at 9.  Appellant testified he had not read the entire Handbook.  Moreover, he testified that while serving his sentence he would report to the prison at 5:00 p.m. on Friday evenings and was released every Sunday at 3:00 p.m., and therefore was available to work on weekdays, so he did not knowingly withhold information from Unemployment Compensation authorities.  *Id.* at 5-6.  After the hearing, Referee Wallace issued a decision affirming the Service Center's determination, ruling "Section 402.6 of the Law makes the [appellant] ineligible for benefits due to his conviction and incarceration during the weeks at issue in this appeal."  Referee's Decision, 9/26/14 at 2.

On further appeal to the Unemployment Compensation Board of Review (Board), appellant argued his weekend confinement did not render him ineligible for benefits under Section 402.6 because his incarceration was not continuous and he continued to be available for work despite that incarceration.  The Board nevertheless agreed with the

---

[2] These penalties were assessed upon appellant pursuant to Section 801 of the Law, 43 P.S. §871, which governs penalties for making false statements and representations in an attempt to obtain or increase compensation.  Section 804(a) governs monetary penalties while Section 804(b) governs "penalty weeks," which amount to a disqualification from receiving benefits in future claim weeks.  The finding of fault overpayment and the assessment of penalties, however, are not at issue in this appeal as they were later nullified by Unemployment Compensation Referee Debbie Wallace and the Unemployment Compensation Board of Review.  *See* Referee Decision, 9/26/14 at 2; Board Decision, 4/15/15 at 1-2.

lower tribunals that appellant was disqualified from receiving benefits. The Board relied on *Kroh v. UCBR*, 711 A.2d 1093 (Pa. Cmwlth. 1998) (claimant disqualified under Section 402.6 for weeks he was incarcerated but eligible for work release), and further held *Kroh* was not undermined by the Commonwealth Court's more recent decision in *Chamberlain v. UCBR*, 83 A.3d 283 (Pa. Cmwlth. 2014) (*Chamberlain I*) (claimants sentenced to house arrest not disqualified under Section 402.6). Board Decision, 4/15/15 at 1-2.[3]

Appellant then filed an appeal with the Commonwealth Court, arguing Section 402.6 does not bar his recovery of benefits. Appellant primarily claimed the statute was unambiguous and does not disqualify claimants who are incarcerated only on weekends, and who are therefore not incarcerated "during" the entire week. Appellant's Commonwealth Court Brief at 10-13. Alternatively, appellant argued any ambiguity should be resolved in his favor as Section 402.6 was enacted solely to prohibit incarcerated individuals who are eligible for work release from improperly receiving benefits and, as such, the statute does not "clearly and plainly exclude" him from receiving benefits. *Id.* at 13-14, 17-19. Appellant additionally argued the Board's interpretation of Section 402.6 was inconsistent with one of the purposes behind his sentence of weekend confinement — to "**work and search for work**." *Id.* at 16 (emphasis in original), *citing* 42 Pa.C.S. §9755(c).

In response, the Board argued "during" has dual definitions and it was "entirely reasonable from a language standpoint for the Board to disqualify a claimant for being incarcerated for two days **during** a week[.]" Board's Commonwealth Court Brief at 10 (emphasis added). The Board contended appellant's "attempt to qualify the applicability of Section 402.6 with a durational requirement . . . [went] beyond the plain language of

---

[3] Following the Board's decision herein, this Court affirmed the Commonwealth Court's decision in *Chamberlain I*. *See Chamberlain v. UCBR*, 114 A.3d 385 (Pa. 2015) (*Chamberlain II*). We discuss *Chamberlain II* in more detail *infra*.

the statute and of the legislative history, and the case law interpreting it." *Id*. at 16-17. Additionally, the Board argued *Chamberlain v. UCBR*, 114 A.3d 385 (Pa. 2015) (*Chamberlain II*), determined "the type of confinement [ ] controlled the application of the disqualifying provision" and did not mention a durational requirement. *Id*. at 19.

A divided Commonwealth Court, sitting *en banc*, affirmed in a published opinion.[4] *Harmon v. UCBR*, 163 A.3d 1057 (Pa. Cmwlth. 2017). The majority first held the word "during" in Section 402.6 is ambiguous as it can either mean "'throughout the duration of,'" which would require a claimant to be incarcerated for an entire week to be ineligible for benefits, or "'at a point in the course of[,]'" which would require only that a claimant be incarcerated at some point in a claim week. *Id*. at 1061, *quoting* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 360 (10th ed. 1997). The majority noted the Board relied on the definition of "during" that would bar a claimant's recovery as long as he is incarcerated at some point in a claim week, and as the Board was the agency charged with administering the statute, its interpretation must be given deference. *Id*. at 1061-62, *citing Summit School, Inc. v. Dep't of Education*, 108 A.3d 192, 198 (Pa. Cmwlth. 2015) (administrative agency's interpretation of statute given deference unless clearly erroneous).

The majority then opined *Chamberlain II*, where this Court held claimants sentenced to house arrest were not barred from receiving benefits under Section 402.6, did not mandate a different result. The majority noted "[t]he principles developed in *Chamberlain*[*II*] . . . demonstrate that the applicability of Section 402.6 of the Law depends upon whether a claimant was incarcerated within the meaning of the Law" and there was no dispute here that appellant was incarcerated, unlike individuals on house arrest. *Id*.

---

[4] Judge Brobson authored the majority opinion, which was joined by Judges Simpson, Covey, and Hearthway. President Judge Leavitt filed a dissenting opinion, which was joined by Judges Wojcik and Cosgrove; Judge Cosgrove also filed a dissenting opinion, which was joined by President Judge Leavitt and Judge Wojcik.

at 1063-64.  The majority observed appellant's sentence was "different from the sentence of home confinement at issue in *Chamberlain* [*II*], because [appellant] was confined, at least part of the week, in a correctional facility at the expense of taxpayers."  *Id.* at 1064. As such, the majority held appellant's sentence was "similar to that of claimants participating in work release programs, which the General Assembly clearly intended to preclude from receiving benefits when it enacted Section 402.6 of the Law."  *Id.*

The majority also rejected appellant's argument the Board's interpretation of Section 402.6 was overly punitive and in contravention of the remedial purpose of the Law.  *Id.* at 1064.  The majority concluded appellant was unequivocally excluded by the plain language of Section 402.6 due to his incarceration, no matter the extent of his confinement.  *Id.*  Finally, the majority held the Board's interpretation of Section 402.6 as "creat[ing] a collateral civil consequence to incarceration" was reasonable and not clearly erroneous and appellant's arguments "in support of an alternative construction . . . [were] not sufficiently compelling to override the deference afforded to the Board."  *Id.* at 1066.

In dissent, President Judge Leavitt agreed the word "during" was ambiguous, but stated she would have resolved such ambiguity in favor of appellant which is more consistent with the remedial nature of the Law and the narrow construction of its disqualification provisions.  *Id.* at 1067, 1069 (Leavitt, P.J., dissenting).  President Judge Leavitt also stated it was inappropriate for the majority to accord deference to the Board's interpretation because its decision "did not address the meaning of the word 'during[,]'" but instead "focused solely on the word 'incarcerated.'"  *Id.* at 1069.  Furthermore, President Judge Leavitt disagreed with the majority's "supposition that [appellant] was in a 'work release' program" as he was not living at taxpayer expense, like those on work release, but instead bore "the burden of maintaining a place to live, securing transportation and providing for all the necessities of life."  *Id.* at 1069-70.  As such,

President Judge Leavitt relied on *Chamberlain II* and the Commonwealth Court's decision in *Kroh* to conclude Section 402.6 was meant to disqualify only individuals on work release because they were already living at the expense of the taxpayer and should not also receive benefits under the Law. *Id.* at 1069, *citing Chamberlain II*, 114 A.3d at 396; *Kroh*, 711 A.2d at 1096. Because appellant, much like the claimant in *Chamberlain II*, had to pay his own living expenses, President Judge Leavitt would have found him eligible to receive benefits. *Id.* at 1069-70.

Judge Cosgrove joined President Judge Leavitt's dissent in full, and wrote separately to provide an additional reason for adopting appellant's interpretation of Section 402.6 — namely, the fact the sentencing judge imposed a sentence of weekend confinement based on appellant's rehabilitative needs. *Id.* at 1071 (Cosgrove, J., dissenting), *citing* 42 Pa.C.S. §9721(b) (directing judges to consider rehabilitative needs at sentencing). According to Judge Cosgrove, weekend confinement was particularly tailored to appellant's rehabilitative needs because it allowed him to "remain employed during the normal workweek" and the receipt of benefits "would have supported [his] rehabilitation[.]" *Id.* Judge Cosgrove observed "it would be the epitome of illogic for the General Assembly to construct a mechanism for courts to fashion a rehabilitative remedy for transgressors with one statute, only to have that remedy eviscerated through exercise of another statute, particularly when the latter has only a 'humane' and 'remedial' purpose." *Id.*

Appellant sought allowance of appeal and we granted review of the following questions:

> a. Did the Commonwealth Court inappropriately expand the concept of administrative deference by evaluating the Board's litigation posture for clear error, so that Commonwealth agency decisions will essentially become unreviewable?

b. Did the Commonwealth Court misconstrue and misapply this Court's holding in *Chamberlain* [*II*] by applying it to disqualify anyone who is serving a sentence of incarceration?

c. Does Section 402.6 of the Unemployment Compensation Law contain a durational requirement such that only claimants who are incarcerated for the entire claim week in question are disqualified?

*Harmon v. UCBR*, 175 A.3d 217 (Pa. 2017) (*per curiam*). We are presented with questions of law pertaining to statutory interpretation, and our scope of review is plenary and non-deferential. *A.S. v. Pa. State Police*, 143 A.3d 896, 903 (Pa. 2016).

The parties' arguments before this Court mirror those presented to the Commonwealth Court, and primarily focus on the meaning of "during" as used in Section 402.6. The word appears to be capable of more than one meaning in the statutory context: appellant claims the statute requires incarceration **throughout an entire given week** before he is barred from receiving benefits, while the Board argues confinement **at any time in a given week** bars such recovery. Moreover, the word is not defined within the Law, so we may consider its "common and approved usage." *Chamberlain II*, 114 A.3d at 394, *citing* 1 Pa.C.S. §1903; *Commonwealth v. Hart*, 28 A.3d 898, 908 (Pa. 2011). As reflected in the parties' contrary positions, the dictionary defines "during" as both "[t]hroughout the course or duration of" or "[a]t some time in." *See* AMERICAN HERITAGE COLLEGE DICTIONARY 427 (3d. ed. 2000). The word as used in Section 402.6 is thus obviously "susceptible to two or more reasonable interpretations," and as such it is ambiguous. *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1193 (Pa. 2014). In determining which meaning of "during" applies to Section 402.6, we must therefore ascertain the intent of the General Assembly by following the dictates of the Statutory Construction Act, 1 Pa.C.S. §§1501-1991.

## II. Administrative Agency Deference

In our effort to ascertain the General Assembly's intent with regard to the meaning of "during" in Section 402.6, we must decide whether or not the Board's interpretation is relevant to that analysis and, as such, whether the Commonwealth Court erred in according any deference to the Board's interpretation. *See Harmon*, 163 A.3d at 1066 ("Board's interpretation of Section 402.6 of the Law is not clearly erroneous, and it is entitled to deference. [Appellant's] arguments in support of an alternative construction . . . are not sufficiently compelling to override the deference afforded to the Board").

Appellant argues the majority below erred by giving deference to the Board's interpretation of Section 402.6 as "this Court [has] held that no deference should be accorded to administrative interpretations offered for the first time in litigation," and the Board first interpreted the word "during" in its brief to the Commonwealth Court. Appellant's Brief at 14, *citing Malt Beverage Distributors Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1154 (Pa. 2009). Appellant contends deference is warranted only where the administrative agency "had espoused its interpretation prior to litigation through some type of policy statement or regulation." *Id.* at 16. Ultimately, appellant agrees with President Judge Leavitt who, in her dissent below, "pointed out that the Board did not even consider the ambiguity of the word 'during' in its decision" and, as such, "'it is impossible to give [the Board's] holding any deference.'" *Id.* at 18, *quoting Harmon*, 163 A.3d at 1069 (Leavitt, P.J., dissenting).

In response, the Board argues the Commonwealth Court appropriately gave deference to its interpretation. The Board disputes appellant's assertion such interpretation was developed only for purposes of the instant litigation as "the Board has consistently denied benefits for post-conviction incarceration regardless of the duration." Board's Brief at 11. The Board cites *Kroh,* noting the court approved denial of benefits for a week in which the claimant was confined for five out of seven days only. *Id.* The

Board further disagrees with appellant's contention deference is warranted only where an agency has issued regulations or policy statements because this Court has specifically stated "'an administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to substantial deference' even where that interpretation is not formally promulgated in regulation." *Id.* at 13, *quoting Borough of Pottstown v. Pa. Mun. Retirement Bd.*, 712 A.2d 741, 744 (Pa. 1998). Ultimately, the Board argues its interpretation should be given deference because of appellant's failure "to establish that the Board's interpretation . . . is unreasonable or inconsistent with the Law." *Id.* at 15.

In his reply brief, appellant distinguishes *Borough of Pottstown* as inapposite because the agency in that case actually had established policy on the question at hand. Appellant observes this Court "cogently demarcated the two types of rules promulgated by Commonwealth agencies which might be entitled to deference: legislative rules and non-legislative rules — which include both 'interpretive rules' and 'statements of policy.'" Appellant's Reply Brief at 2, *quoting Northwestern Youth Services, Inc. v. Dep't of Public Welfare*, 66 A.3d 301, 310-11 (Pa. 2013). Appellant ultimately argues since the Board has failed to issue any interpretive rules or statements of policy regarding the meaning of the word "during," the Commonwealth Court erred in giving deference to the Board's interpretation. *Id.* at 5.

It is clear that one of the factors to be considered when ascertaining the intent of the General Assembly with regard to the meaning of statutory language is any "[l]egislative and administrative interpretations of such statute." 1 Pa.C.S. §1921(c)(8). This Court has held "[a]n interpretation by the agency charged with the administration of a particular law is normally accorded deference, unless clearly erroneous." *Harkness v. UCBR*, 920 A.2d 162, 171 (Pa. 2007). Moreover, since *Harkness*, we have described two types of agency interpretations which are accorded different levels of deference.

Agency interpretations that are promulgated in published rules and regulations have been referred to as "legislative rules" and "are accorded a particularly high measure of deference[,]" also known as *Chevron*[5] deference, and "enjoy a presumption of reasonableness[.]" *Northwestern Youth Services*, 66 A.3d at 310-11. Non-legislative rules, also known as "interpretive rules" or "guidance documents," such as "manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, [and] press releases" are accorded "a lesser quantum of deference[,]" also known as *Skidmore*[6] deference, which allows an agency's interpretation to be disregarded when a court is "'convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent.'" *Id.* at 310-12, *quoting Pa. Human Relations Comm'n v. Uniontown Area School District*, 313 A.2d 156, 169 (Pa. 1973). Notably, although we have considered these varied situations where agency interpretations inform our statutory construction analysis, and have ascribed some measure of value to those interpretations under certain circumstances, we have never held the agency's opinion is binding on this Court, and of course it is not.[7] Indeed, we have declined to accord **any** deference to an agency's interpretation of a statute where "there is nothing in the record indicating that the [agency] had considered and decided

---

[5] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844-45 (1984).

[6] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

[7] To the extent the concurring opinions of Justice Donohue and Justice Wecht suggest affording any amount of deference to agency interpretations is always improper, we observe our precedent clearly authorizes our approach and no party has presented an argument that those decisions should be overruled. Respectfully, we do not ascribe "unqualified deference" to agency opinion. *See* Concurring Opinion, slip op. at 2 (Wecht, J.). Similarly, we do not "abdicate our judicial role" by according appropriate weight to our own precedent. *See* Concurring Opinion, slip op. at 4 (Donohue, J.). Our analysis reflects the current state of Pennsylvania law.

[the] issue at a point prior to the instant litigation." *Malt Beverage Distributors Ass'n*, 974 A.2d at 1154. As the Board has never formally explained its view of the meaning of the word "during" in Section 402.6 prior to the instant litigation, we agree with appellant that the Commonwealth Court erred in according any deference to the Board's arguments contained in litigation-related filings.[8]

We recognize the Board cites *Kroh* and other cases where individuals were denied benefits on the basis of post-conviction incarceration, regardless of its duration, for the proposition it has considered and taken a position on the meaning of "during" long before the instant litigation, but careful review reveals the dispute in those cases was over whether an individual was "incarcerated" for purposes of Section 402.6, and the meaning of the word "during" was never actually discussed. Furthermore, the Board's reliance on *Borough of Pottstown* as an example of this Court according deference to an agency's view in the absence of formally promulgated rules and regulations is misplaced. In that case, the Pennsylvania Municipal Retirement Board did rely on an interpretive rule — namely, its "policy that [excess interest] only becomes due to be credited to municipal and member accounts on December 31st of any given year, and a municipality that withdraws before that date will not receive excess interest for that year" — and such interpretive rule was correctly accorded deference because there was no indication it

---

[8] We acknowledge Chief Justice Saylor's apt observation regarding the Board's "adjudicative role at the time it proffered its interpretation" and how that role informs our deference to such an interpretation. Concurring Opinion, slip op. at 1 (Saylor, C.J.). In this case, however, the Board did not address the meaning of the word "during" as used in Section 402.6 in its adjudication, but based its decision solely on cases interpreting the meaning of the word "incarceration." Board Decision, 4/15/15 at 1, *citing Chamberlain I*; *Kroh*. It was not until the Board filed its brief with the Commonwealth Court — clearly in the course of the instant litigation — that it offered its interpretation of the word "during." As a result, the question of how much deference is "due to an agency's interpretation of a statute rendered while acting in an expert capacity during the course of an adjudication" is not directly implicated here. Concurring Opinion, slip op. at 1 (Saylor, C.J.), *citing ARIPPA v. PUC*, 792 A.2d 636, 660 (Pa. Cmwlth. 2002).

violated legislative intent. *Borough of Pottstown*, 712 A.2d at 742, 744. *See also Northwestern Youth Services*, 66 A.3d at 310-312, *citing Skidmore*, 323 U.S. at 140. Here, however, the Board has no formal policy or other statement of the kind that properly warrants some level of deference, only its arguments in briefs prepared for litigation.

As the Board has never promulgated its current interpretation in published rules and regulations and there is nothing in the record to suggest the Board interpreted the word in guidance documents, the facts in this case more closely track those in *Malt Beverage Distributors Ass'n,* and no deference is warranted. The Commonwealth Court majority erred in this regard.

### III. Other Factors Relevant to Statutory Construction

The second and third issues presented are intertwined, and we consider *Chamberlain II* in our effort to discern the General Assembly's intent when using the word "during" in Section 402.6. First, appellant refers to the comments of State Representative William Lloyd in support of the amendment creating Section 402.6. The representative observed, in pertinent part: "'[I]t is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you then get unemployment compensation. The businessman in my district and the employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.'" *Chamberlain II,* 114 A.3d at 391, *quoting* Statement of Representative William Lloyd, 1996 Pa. Legis. Journal, House, p. 835 (May 13, 1996). Appellant notes this Court recognized "Representative Lloyd's comment 'suggests that Section 402.6 was enacted to . . . preclud[e] unemployment compensation benefits to those claimants who are incarcerated in prison and eligible for work release.'" Appellant's Brief at 25, *quoting Chamberlain II*, 114 A.3d at 396. Appellant contends these statements by Representative Lloyd and the *Chamberlain II* Court support his claim he is

not disqualified from receiving benefits under Section 402.6 because his sentence of weekend confinement is materially different from work release since he is not continuously incarcerated each night but is free from the custody and control of the state for the majority of the week and nothing in the legislative history supports a finding that the General Assembly intended to disqualify individuals in this situation. *Id.* at 26.

Appellant further argues the Commonwealth Court's decision was inconsistent with the remedial nature of the Law and ignored Pennsylvania's jurisprudence holding disqualification provisions should be narrowly interpreted such that an individual should only be denied benefits by explicit language which clearly and plainly excludes him. *Id.* at 28, *citing Gladieux Food Services, Inc. v. UCBR*, 388 A.2d 678, 682 (Pa. 1978) (provisions precluding receipt of benefits should be narrowly interpreted); *Bliley Electric Co. v. UCBR*, 45 A.2d 898, 904 (Pa. Super. 1946). Moreover, appellant contends the Commonwealth Court's reading of *Chamberlain II* undermines the remedial purpose of the Law. In support of this argument, appellant quotes the following passage from *Chamberlain II*: "'Absent clear language or legislative intent to disqualify claimants sentenced to home confinement, and considering the remedial purposes underlying the UC Law, we hold that Section 402.6's preclusion of benefits does not apply to claimants on house arrest.'" *Id.* at 29, *quoting Chamberlain II*, 114 A.3d at 396. As such, appellant asserts the "blanket and punitive" holding of the majority below is in conflict with the rationale of *Chamberlain II* and its "establish[ment of] statutory interpretation principles for Section 402.6 that require benefits to be granted." *Id.* at 23.

Appellant also argues the majority below misconstrued the Law's declaration of public policy and its stated purpose of alleviating economic insecurity and preventing

indigency during unemployment. *Id.* at 28, *citing* 43 P.S. §752.[9]  Specifically, appellant claims the majority erroneously introduced "the concept of 'collateral consequences' into the [L]aw without any support from the legislative history of Section 402.6" and in contravention of the Superior Court's pronouncement that "'[u]nemployment compensation cannot be administered upon vague theories imported from other and unrelated realms of the law.'"  *Id.* at 29-30, *quoting MacFarland v. UCBR*, 45 A.2d 423, 425 (Pa. Super. 1946).  According to appellant, "Section 3 focuses on fault as it applies to the **reason** for the unemployment" and using his incarceration "[t]o apply the concept of 'fault' as disqualifying when the conduct [had] **no bearing** on [his] **employment**, contravenes the purpose of the law."  *Id.* at 30-31 (emphasis in original).

Finally, appellant argues the Commonwealth Court's interpretation of Section 402.6 is inconsistent with the purposes behind his criminal sentence of partial

---

[9] Section 3 of the Law, 43 P.S. §752, provides as follows:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance.  Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.  The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency.  The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. §752.

confinement, two of which are to allow him "'[t]o work at his employment'" and "'[t]o seek employment.'" *Id.* at 31-32, *quoting* 42 Pa.C.S. §9755(c). *See also* 34 Pa. Code §65.11 (detailing work search requirements for maintaining eligibility under the Law). Appellant observes that sentences which "permit individuals to remain connected to the workforce are imperative for rehabilitation purposes" and a narrow interpretation of Section 402.6 conforms to "the rehabilitative purposes of the partial confinement sentencing provision." *Id.* at 33-34.[10]

In response, the Board argues the legislative history of Section 402.6 supports its interpretation as "Representative Lloyd did not limit the reach of his amendment to the work release context[,]" but "specifically described his amendment using much broader language, stating that 'this amendment says that someone who is incarcerated after a conviction does not receive unemployment compensation benefits.'" Board's Brief at 21, *quoting* Statement of Representative William Lloyd, 1996 Pa. Legis. Journal, House, p. 835 (May 13, 1996). The Board also points to the title ("Ineligibility of Incarcerated Employe") and purpose ("Providing for ineligibility of incarcerated employe") of Section 402.6 to support its contention the General Assembly intended "that Section 402.6 of the

---

[10] The Defender Association of Philadelphia filed an *amicus curiae* brief supporting appellant as did Community Legal Services, Inc., The National Employment Law Project, The Public Interest Law Center, and The Homeless Advocacy Project (Community Legal Services), collectively. They too view the Board's interpretation of Section 402.6 as inconsistent with the reasoning behind appellant's criminal sentence. The Defender Association contends the Board's interpretation will cause courts to be less likely to impose sentences of partial confinement and defendants to be less likely to plead guilty, and also could lead to individuals losing unemployment benefits when they are detained based on errors by the probation department. Defender Association's Brief at 4-11. Community Legal Services argues the Board's interpretation would be counterproductive to the rehabilitative goals set by the sentencing judge and wrongly ties a collateral consequence to an individual's sentence. Community Legal Services' Brief at 9-11.

Law broadly applies to persons incarcerated after a conviction, and is not limited to the work release context." *Id.*

The Board reiterates its argument the Commonwealth Court correctly deferred to its interpretation as it is reasonable and not clearly erroneous. *Id.* at 20. The Board also argues accepting appellant's interpretation would render Section 402.6 "mere surplusage" as anyone who is incarcerated for a full week is already ineligible to receive benefits based on the traditional "able and available" analysis. *Id.* at 23. The Board further contends its interpretation comports with other disqualification provisions in the Law, most notably Section 402,[11] where "the disqualification applies for the whole week

[11] Section 402 of the Law states, in relevant part, the following:

An employe shall be ineligible for compensation for any week . . .

> (a) In which his unemployment is due to failure, without good cause, either to apply for suitable work . . . or to accept suitable work . . .

> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . .

> (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute . . .

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . .

> (e.1) In which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test . . .

> (h) In which he is engaged in self-employment . . .

> (j) In which the employe fails to participate in reemployment services[.]

43 P.S. §802.

regardless of what day of the week the [disqualifying] incident occurs." *Id*. at 23-24, *citing* 43 P.S. §802(a), (b), (d), (e), (e.1), (h), (j).

Lastly, the Board argues its interpretation does not contravene the remedial purpose of the Law as its interpretation "is no more punitive than other mandatory disqualifications" and the principles of liberal and broad construction "cannot be used to interpret a provision in such a way as to render it surplusage[,] . . . [n]or can [they] override a statutory interpretation that effectuates clear legislative intent." *Id*. at 26-27 (internal citations omitted). In connection with this argument, the Board disagrees with appellant's assertion *Chamberlain II* established statutory construction principles indicating benefits ought to be granted, and instead claims *Chamberlain II* recognized Section 402.6 changed the legal landscape of the Law by disqualifying those who are incarcerated due to a conviction. *Id*. at 16, *citing Chamberlain II*, 114 A.3d at 396. The Board ultimately argues since appellant concedes he was incarcerated due to a conviction, he is disqualified from receiving benefits. *Id*. at 17.

In his reply brief, appellant disagrees with the Board's suggestion his interpretation would render Section 402.6 "mere surplusage." Appellant's Reply Brief at 5-6. In fact, appellant contends his interpretation allows Section 402.6 to address the exact mischief the General Assembly sought to remedy — precluding incarcerated individuals who are eligible for work release and thus are "able and available" to work from also receiving benefits. *Id*. at 6. Appellant insists the Board's reliance on Section 402 is misplaced as that provision uses the word "in" any week rather than "during" any week to define ineligibility in those enumerated circumstances. *Id*. at 10, *citing* 43 P.S. §802.

Our analysis of the meaning of "during" in Section 402.6 is guided by the Statutory Construction Act, 1 Pa.C.S. §§1501-1991, which "directs courts to ascertain and effectuate the intent of the General Assembly." *A.S.*, 143 A.3d at 903, *citing* 1 Pa.C.S.

§1921(a). Although "[t]he statute's plain language generally provides the best indication of legislative intent[,]" where, as here, the statutory language at issue "is determined to be ambiguous [ ] we may go beyond the text and look to other considerations to discern legislative intent." *Id.* (internal citations and quotations omitted). Such considerations include, *inter alia*, the occasion and necessity for the statute, the mischief to be remedied, the consequences of a particular interpretation, and the contemporaneous legislative history. 1 Pa.C.S. §1921(c). Furthermore, we are to assume, *inter alia*, the General Assembly intended the entire statute to be effective and did not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. §1922.

We recently discussed the occasion and necessity for the Law and the mischief that Section 402.6 was intended to remedy, which includes the contemporaneous legislative history, in *Chamberlain II*, and we reiterate that discussion here:

> The UC Law was enacted to alleviate the economic insecurity resulting from unemployment, which is a serious menace to the health, morals and welfare of Pennsylvania citizens. 43 P.S. § 752 (Declaration of public policy). The statute requires "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." *Id.* "[T]he provisions of the [UC Law] must be liberally construed to provide the broadest possible benefits to those who experienced forced unemployment." *Renne v. [UCBR]*, 453 A.2d 318, 321 n. 4 ([Pa.]1982).
>
> Prior to the enactment of Section 402.6 in 1996, there was no specific provision in the UC Law disqualifying an incarcerated employee from receiving unemployment compensation benefits. Under these circumstances, eligibility determinations were made by adhering to Section 401(d)'s[, 43 P.S. 801(d),] requirement that the claimant is able and available for suitable work. In *Greer v. [UCBR]*, 392 A.2d 918 ([Pa. Cmwlth.] 1978), a case which predated the adoption of Section 402.6 by eighteen years, the claimant had been receiving unemployment compensation benefits when he was incarcerated for violation of a support order. The sentencing order placed the claimant in the prison work release program and conditioned his release upon his either obtaining employment or paying the support arrearages in full. While the claimant was free to leave prison to go to work, he had to be accompanied by prison officials for purposes of seeking a job.

Both the referee and the UCBR ruled that the claimant was ineligible for benefits under Section 401(d)'s "able and available for suitable work" standard, finding that he was not free to seek employment because he could not leave the prison alone for purposes of obtaining work and, thus, was not realistically attached to the labor force. The Commonwealth Court in *Greer* reversed, finding that the claimant was receiving benefits at the time of his incarceration, had no restrictions on his availability to work, and made every effort to find a job, but was unsuccessful. It emphasized that the claimant's release from prison was expressly conditioned upon his obtaining employment, and the mere fact that the claimant was required to be accompanied by a prison official when he left the prison to find work did not warrant the denial of benefits. The court explained that each case must be examined on its own facts, as not all prisoners in work release programs would be eligible for unemployment compensation benefits. Accordingly, the status of the law prior to the enactment of Section 402.6 was that an employee incarcerated in prison and on work release could be eligible for unemployment compensation benefits if he was, *inter alia,* able and available for work.

While the General Assembly did not act expeditiously after the Commonwealth Court's 1978 pronouncement in *Greer*, it ultimately changed the legal landscape by amending the UC Law in 1996 to *per se* disqualify from benefits those claimants who were "incarcerated after a conviction." The proponent of the legislation, Representative William Lloyd, made the following illustrative comment when he offered the amendment for a vote.

> Mr. Speaker, this amendment would put into the Unemployment Compensation Law a prohibition which is similar to one which we inserted into the workers' compensation law in 1993. Specifically, this amendment says that someone who is incarcerated after a conviction does not receive unemployment [compensation] benefits.
>
> I learned to my surprise a month or so ago from a business in my district that it is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you then get unemployment compensation. This businessman in my district and the other employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.

Statement of Representative William Lloyd, 1996 Pa. Legis. Journal, House, p. 835 (May 13, 1996).

> This comment suggests that Section 402.6 was enacted to change the
> law originally established by the Commonwealth Court's decision
> in *Greer* by precluding unemployment compensation benefits to those
> claimants who are incarcerated in prison and eligible for work
> release. *See Kroh,* 711 A.2d at 1096 n. 7 (noting that it could be argued
> that the General Assembly's enactment of Section 402.6 of the UC Law
> "overruled" judicial decisions such as the Commonwealth Court's
> decision in *Greer,* which permitted a claimant incarcerated in prison and
> participating in the work release program to obtain unemployment
> compensation benefits).

*Chamberlain II*, 114 A.3d at 395-96.[12]   Based on this legislative history and the differing circumstances of individuals on house arrest and those continuously incarcerated, the *Chamberlain II* Court held the General Assembly did not intend for the language of Section 402.6 to disqualify individuals serving sentences of home confinement from receiving benefits.[13]

There are also stark differences between the situations of individuals who are continuously incarcerated but eligible for work release and individuals serving a sentence of weekend confinement only, and these differences are even more compelling when individuals in the latter group are unemployed.  As aptly stated by President Judge Leavitt in her dissent below, "[u]nlike the incarcerated inmate on work release, [appellant] does not live at the taxpayer expense.  Other than his weekend

---

[12] The Commonwealth Court has also acknowledged that one reason for the enactment of Section 402.6 was that the General Assembly did not "want prisoners who were incarcerated and living at taxpayers' expense to receive unemployment compensation just because they were eligible for work release."  *Kroh*, 711 A.2d at 1096.

[13] Contrary to Justice Wecht's assertion, our analysis does not turn on "a single floor statement delivered by a single legislator," *see* Concurring Opinion, slip op. at 4 (Wecht, J.), but instead relies in part on the interpretation of Section 402.6 in *Chamberlain II*. Moreover, we disagree with the Board's assertion *Chamberlain II* held Section 402.6 disqualifies all individuals who are serving a sentence of incarceration due to a conviction. Rather, the *Chamberlain II* Court held, as a disqualification provision, Section 402.6 must be narrowly construed and, under such a construction, a sentence of house arrest did not render a claimant incarcerated and ineligible.  114 A.3d at 396.  Other than stating disqualification provisions must be narrowly construed, the *Chamberlain II* Court made no broad pronouncements regarding the application of Section 402.6.

meals from the government, he bears the burden of maintaining a place to live, securing transportation and providing for all the necessities of life." *Harmon*, 163 A.3d 1069-70 (Leavitt, P.J., dissenting). On the other hand, a work release-eligible inmate is in the complete care and custody of the state when he or she is unemployed and, in fact, is unable to leave the institution; there is no need for unemployment compensation. In this context, we conclude the legislative history of the statute does not suggest the General Assembly intended to disqualify those serving sentences of weekend confinement from receiving benefits.

Furthermore, applying the Board's contrary interpretation would lead to an absurd result. For example, if a claimant was sentenced to serve 60 consecutive days of total confinement, he would be disqualified from receiving benefits for only the eight week period which encompassed those 60 days of incarceration. But where an individual like appellant was sentenced to serve 60 days of weekend only confinement, the Board's interpretation would disqualify him from receiving benefits for a period of 30 weeks. This result is especially absurd where two purposes of such a sentence would be to allow the claimant to work or to seek employment while simultaneously providing for his own living expenses. *See* 42 Pa.C.S. §9755(c).

Additionally, limiting the disqualification provision of Section 402.6 to individuals who are incarcerated for an entire claim week does not render the section "mere surplusage." In fact, appellant's interpretation confronts the exact mischief meant to be remedied — preventing incarcerated individuals who are eligible for work release from also receiving unemployment benefits. Although otherwise able and available to work under Section 401(d) of the Law, Section 402.6 ensures those individuals are disqualified from receiving benefits in accordance with the expressed legislative intent.

Moreover, the Board's interpretation does not take into account the distinguishable language of other ineligibility provisions elsewhere in the Law, which clearly apply regardless of the duration of the disqualifying conduct. For example, Section 402 of the Law describes circumstances when "[a]n employe shall be ineligible for compensation for any week . . . [i]n which" the enumerated disqualifying conduct occurs. 43 P.S. §802 (emphasis added). This particular phrasing evidences the General Assembly's intent to apply those provisions regardless of the duration of the disqualifying conduct, suggesting the claimant is ineligible when the conduct occurs any time at all in a given week. *See* AMERICAN HERITAGE COLLEGE DICTIONARY 684 (3d. ed. 2000) (defining "in" as "[w]ithin the limits, bounds, or area of" when used as preposition). However, in Section 402.6 — the provision we interpret in this appeal — the General Assembly used the phrase "during which," and thus signaled a different legislative intent. *See Commonwealth v. Mazzetti*, 44 A.3d 58, 67 (Pa. 2012) (omission of language in a similar section of a statute significant to show different legislative intent). Such differing legislative intent makes sense as Section 402 disqualification involves fault on the part of a claimant which may warrant harsher treatment, *i.e.*, making ineligibility easier to establish based on any disqualifying conduct at all in a given week. By contrast, Section 402.6 does not apply to fault-based conduct such as failing without good cause to apply for work, unjustifiably refusing a suitable offer of employment, or voluntarily leaving work without a valid reason. *See* 43 P.S. §802. When considered in this light, it is appellant's interpretation that is more consistent with the purpose of the Law, namely, to prevent economic insecurity among "persons unemployed through **no fault of their own**." 43 P.S. §752 (emphasis added).

We therefore reject the Board's position that the General Assembly intended for Section 402.6 to disqualify claimants serving sentences of weekend-only confinement from receiving unemployment compensation benefits. Our reading is

consistent with the remedial purpose of the Law and our prior pronouncement that disqualification provisions "should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions." *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984) (internal citations omitted).

### IV. Conclusion

Accordingly, we hold the General Assembly intended "during," as used in Section 402.6, to mean "throughout the duration of" such that the statute's disqualification provision applies only in circumstances where an individual is incarcerated due to a conviction for the entire week in which he claims to be eligible to receive unemployment compensation benefits. The Commonwealth Court erred in holding appellant was disqualified from receiving benefits on the basis of his sentence of weekend-only confinement.

The order of the Commonwealth Court is reversed and the matter is remanded to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.

Justices Baer and Todd join the opinion in full, and Chief Justice Saylor joins Parts I, III and IV.

Chief Justice Saylor and Justices Donohue and Wecht file concurring opinions.

Justice Mundy files a dissenting opinion.