**[J-9-2020] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

SEDA-COG JOINT RAIL AUTHORITY, : No. 12 MAP 2019
:
        Appellant : Appeal from the Order of the
: Commonwealth Court dated May 3,
: 2018, Reargument denied June 28,
        v. : 2018, at No. 617 CD 2017
: Reversing the Order of the Clinton
: County Court of Common Pleas,
CARLOAD EXPRESS, INC., : Civil Division, dated May 11, 2017 at
SUSQUEHANNA UNION RAILROAD : No. 2015-CV-933 and Remanding
COMPANY, AND NORTHERN PLAINS : for entry of summary judgment.
RAILROAD, INC., :
: ARGUED: March 11, 2020
        Appellees :

## CONCURRING OPINION

**JUSTICE WECHT**                         **DECIDED: October 1, 2020**

I agree with the Majority that, "for voting purposes, *presence* under the common law [quorum rule] *also presupposes voting* in order to be counted for purposes of obtaining a majority vote. . . . As such, for determination of a majority under the common law rule, 'presence' and 'voting' are synonymous . . . ." Maj. Op. at 21-22 (citing *DiGiacinto v. City of Allentown*, 406 A.2d 520, 523 (Pa. 1979)) (emphasis added). Today's case is difficult because the statutory provision at issue here, 53 Pa.C.S. § 5610(e), omits reference to "voting" and employs the following language: "[A]ll action may be taken by vote of a majority of the members *present* unless the bylaws shall require a larger number." (emphasis added). Nonetheless, the General Assembly having enacted Section 5610(e) *prior* to September 1, 1937, we are not free to infer abrogation of common law, inasmuch as the legislature did not provide any compelling indication of

intent to abrogate. It is the General Assembly itself that has imposed this requirement of very clear intention, instructing us in the Statutory Construction Act that "[p]rovisions enacted finally prior to September 1, 1937 which are in derogation of the common law" "shall be strictly construed." 1 Pa.C.S. § 1928(b)(8).[1] Accordingly, I join the Majority Opinion.

I write separately to address two points.

First, it is noteworthy that the General Assembly has *not* instructed this Court similarly to thumb the common law side of the scale for statutes enacted *after* September 1, 1937. *See* 1 Pa.C.S. § 1928(a) ("The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937."). The SEDA-COG Joint Rail Authority (the "JRA") argues reasonably that "present" modifies "members," and that "present under Section 5610(e) means 'present at a meeting' or in attendance" according to its ordinary definition. JRA's Brief at 42-44. Without the Legislature's directive in Section 1928(b)(8), JRA's plain text argument might very well carry the day. In other words, a provision that employed identical language but was finally enacted after September 1, 1937 might well require that members of a board who are physically present, but abstaining, be counted in determining a majority of the "members present." *Cf.* Maj. Op. at 12 n.7 (noting that it was "unclear why the Court in" *Commonwealth ex rel.*

---

[1] I agree with the Majority that, although the substance of Section 5610(e) has been re-enacted twice since 1935, because the provision "at the same time [was] reenacted in the same or substantially the same terms by the repealing statute," 1 Pa.C.S. § 1962, the 1935 date should control for the purposes of Section 1928(b)(8). *See* Maj. Op. at 14-15. In this case, as the Majority highlights, the language in the three enactments of Section 5610(e) is very similar. *See id.* Yet there may be other statutes where it is less clear whether re-enacted language is "substantially the same" for the purposes of Section 1962. In such instances, courts may be called upon to interpret the language used by the General Assembly in Section 1962 itself.

*Bagnoni v. Klemm*, 454 A.2d 531 (Pa. 1982), and *Stoltz v. McConnon*, 373 A.2d 1096 (Pa. 1977), "was concerned with abrogation of common law principles at all," as "[t]he statutes at issue in those cases were enacted well after 1937 and thus, pursuant to [Section] 1928(a), the rule of strict construction vis-à-vis common law voting principles had no application when interpreting their proper application").[2]

The common law quorum rule is not a totemic command beyond legislative reach. The rule is not akin to a constitution, subordinating all other law. The General Assembly may supersede or abrogate the common law. *See generally Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d 715, 721 (Pa. 1978) ("This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts."). Indeed, as addressed *infra*, the General Assembly has authorized municipal authorities *themselves* to do precisely that. And while "we should not infer that the legislature intended to supplant established common law without clear[] evidence," *Roverano v. John Crane, Inc.*, 226 A.3d 526, 550 (Pa. 2020) (Wecht, J., concurring), we also do not require the General Assembly to solemnly and explicitly intone, "this statute abrogates the common law," when abrogation is its obvious intention. "Critically, we rarely, if ever, require 'magic words' to be used in legal discourse." *Temple v. Providence Care Ctr.*, __ A.3d __, 2020 WL 4137977, slip op. at 9 (Pa. 2020) (Todd, J., concurring and dissenting). There is no need for the General Assembly to use any particular phrase to abrogate common law, including the common law quorum rule.

---

[2] It is perhaps worth noting that Section 1928 was enacted on May 28, 1937 (codified at 46 P.S. § 558 (repealed and recodified at 42 Pa.C.S. § 1928)), with its application to commence approximately three months later. In effect, the enactment embodied respect for the restrictive background against which former legislatures had fashioned their laws, while shifting the balance for the 1937 and successive sessions of the General Assembly.

Indeed, for statutes enacted after September 1, 1937, statutory language that is "clear and free from all ambiguity," 1 Pa.C.S. § 1921(b), *i.e.*, the plain text, can serve as the "clear[] evidence," required to "supplant established common law," *Roverano*, 226 A.3d at 550 (Wecht, J., concurring).[3]

Nonetheless, while magic words need not be employed, the General Assembly, in enacting Section 1928(b)(8), chose to weight the scales against displacement of common law rules for purposes of interpreting statutes enacted before September 1, 1937. By contrast, the General Assembly also chose to provide that statutes enacted after September 1, 1937 need not confront such weighting nor satisfy such an elevated standard. We should take care in future cases to honor that shift in the lawmakers' approach. This legislative differentiation leads to the distinct possibility of divergent results between today's case and a case involving interpretation of the same statutory language for which Section 1928(b)(8) does not apply. Because the phrase "members present" is not in clear and obvious derogation of common law as required by Section 1928(b)(8) for statutes enacted before September 1, 1937, I join the Majority Opinion. I expressly reserve judgment on the effect of substantially similar statutory language

---

[3]    As the Court recently noted in *Roverano*, when we are deciding whether the General Assembly wanted to supplant common law, we should presume that the General Assembly did not intend a result that "is unreasonable and impossible of execution." *Roverano*, 226 A.3d at 542 (citing 1 Pa.C.S. § 1922(1)); *see also id.* at 551-52 (Wecht, J., concurring) (observing that it is impossible "to apportion relative liability in asbestos cases," and, thus, the General Assembly did not intend such a result). If we were to adopt the JRA's interpretation of Section 5610(e), the plain text of that statute would not be impossible to execute. To the contrary, counting physically present, but abstaining, members of a municipal authority board easily could be executed. Thus, the JRA's argument that the plain text of Section 5610(e) requires such an interpretation would be persuasive. However, as noted above, because the General Assembly enacted Section 5610(e) before September 1, 1937, and because the General Assembly's language can be interpreted harmoniously with the common law quorum rule, I agree that the General Assembly did not clearly intend to abrogate common law in that particular statute.

enacted after September 1, 1937, for which the plain text of the statute, without the common law presumption of Section 1928(b)(8), might require a different result.

Second, I agree with the Majority that we owe no deference to the JRA's interpretation of Section 5610(e).  *See* Maj. Op. at 26-29.  Were our courts to defer to the views of each and every municipal authority governed by the Municipal Authorities Act ("MAA"), 53 Pa.C.S. §§ 5601-23, we would end up with a hopeless patchwork of municipal authority-specific interpretations of the MAA.  Even if the JRA's interpretation in this case is not a "manifest or flagrant abuse of discretion," *Bucks Cty. Servs., Inc. v. Phila. Parking Auth.*, 195 A.3d 218, 237 (Pa. 2018), the same might be said of a contrary interpretation by another municipal authority, *i.e.*, one that reads Section 5610(e) in conformity with the common law quorum rule.  Indeed, this case presents a very close interpretive question, one that might reasonably and readily be resolved in favor of either the JRA or a municipal authority adopting the contrary interpretation in the event that we did apply a deferential, rather than *de novo*, standard of review.  But were we to defer to both bodies in separate challenges, Section 5610(e) would have two different, but still legally sound, interpretations.  Surely the General Assembly did not enact a unitary statute to govern municipal authorities only to see us break it into irreconcilable pieces by acceding to the disparate interpretation ventured by the very authorities that the legislature sought to govern.

The General Assembly provided the JRA with the means to abrogate the common law quorum rule:  the JRA "may change its bylaws to do so."  Maj. Op. at 30; *see also* 53 Pa.C.S. § 5610(e) ("[A]ll action may be taken by vote of a majority of the members present *unless the bylaws shall require a larger number*.") (emphasis added).  But allowing a municipal authority to act affirmatively and in an accountable fashion to modify the

common law standard is quite distinct from deferring to an interpretation of a statute that might not necessarily reflect the will of a majority of its members.

My own reluctance to defer to administrative agencies' statutory interpretations is well-documented. *See, e.g.*, *Crown Castle NG East LLC v. Pa. Pub. Util. Comm'n*, __ A.3d __, 2020 WL 4154767 (Pa. 2020) (Wecht, J. concurring); *Harmon v. Unemployment Comp. Bd. of Review*, 207 A.3d 292, 310-12 (Pa. 2019) (Wecht, J., concurring). But I note that, even when this Court has chosen in the past to defer to an agency, it has done so where that agency is "charged with the administration of a particular law" by an express legislative grant of authority. *Harkness v. Unemployment Comp. Bd. of Review*, 920 A.2d 162, 171 (Pa. 2007). The MAA confers no such authority upon the JRA. Thus, even if I were to imagine for a moment that I had no principled objection to the perpetuation of administrative agency deference jurisprudence, JRA's interpretation of the MAA is in any event entitled to no deference. *Cf. King v. Burwell*, __ U.S. __, 135 S. Ct. 2480, 2489 (2015) (declining to defer to an interpretation of the Affordable Care Act by the Internal Revenue Service ("IRS") because "[i]t is especially unlikely that Congress would have delegated this decision to the *IRS*, which has no expertise in crafting health insurance policy of this sort") (emphasis in original).