**[J-12-2020] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| MICHAEL WILLIAM WOODFORD AND OPTIONS INSURANCE AGENCY, | : No. 65 MAP 2019 |
| | : |
| | : Appeal from the Order of the |
| Appellants | : Commonwealth Court at No. 1005 |
| | : CD 2018 dated January 4, 2019, |
| | : Reconsideration Denied February |
| v. | : 15, 2019, Affirming in Part and |
| | : Reversing in Part the Decision of the |
| | : PA Insurance Department at No. |
| COMMONWEALTH OF PENNSYLVANIA INSURANCE DEPARTMENT, | : SC16-11-001 dated June 21, 2018. |
| | : |
| | : ARGUED:  March 11, 2020 |
| Appellee | : |

## CONCURRING OPINION

**JUSTICE WECHT**                                              **DECIDED:  December 22, 2020**

I agree that Subsection 310.74(a) of the Insurance Department Act[1] prohibits insurance producers like Appellants from charging fees (other than commissions) in connection with consumer transactions.  The Act unambiguously precludes such fees. We need not resort to non-textual considerations such as the legislative purpose of the Act or the consequence of allowing insurance producers to collect additional fees.[2]

The General Assembly enacted all of the statutory provisions relating to insurance producers at issue here in a single piece of legislation, Act 147 of 2002.  Among many other things, that legislation: allowed insurance producers to operate within the Commonwealth, 40 P.S. § 310.3; authorized the Insurance Commissioner to issue (and revoke) the licenses of insurance producers, 40 P.S. § 310.2; and set forth licensing and

---

[1]     *See* 40 P.S. §§ 1-326.7.

[2]     *See* Maj. Op. at 22-23.

examination requirements for insurance producers, 40 P.S. § 310.4. The law also contains two sections relating to insurance producers' fees and commissions. The first of these sections, now codified at 40 P.S. § 310.73, provides as follows:

**Receipt of commissions**

**(a) Limitation.—**A licensee may accept a commission, brokerage fee, service fee or other compensation from an insurance entity or licensee for selling, soliciting or negotiating a contract of insurance. Except as provided in subsection (b), a person may not accept a commission, brokerage fee, service fee or other compensation from an insurance entity or licensee if the person is not a licensee and the compensation is for activities related to the sale, solicitation or negotiation of a contract of insurance.

**(b) Exception.—**A person may accept:

(1) a renewal or other deferred commission for selling, soliciting or negotiating a contract of insurance if the person was a licensee at the time of the sale, solicitation or negotiation; or

(2) a fee for referring persons to a licensee that are interested in purchasing insurance provided they do not discuss specific terms and conditions of a contract of insurance and, in the case of referrals for insurance that is primarily for personal, family or household use, they receive no more than a one-time, nominal fee of a fixed dollar amount for each referral that does not depend on whether the referral results in a sale.

A person may not accept a commission or fee under this subsection if the person is a licensee under suspension or a former licensee whose insurance producer license was revoked.

40 P.S. § 310.73.

The other provision governing insurance producers' fees, Section 310.74, provides:

**Imposition of additional fees**

**(a) General rule.—**A licensee may charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for commercial business. The fee charged by the licensee shall be disclosed in advance in writing to the person and shall be reasonable in relationship to the services provided.

**(b) Application fee.—**Notwithstanding other provisions of this section, no insurance producer shall charge a fee for the completion of an application for a contract of insurance.

40 P.S. § 310.74.

Oddly enough, all parties here appear to concede that Subsection 310.74(a) is ambiguous regarding whether insurance producers can charge additional fees to consumers.[3] I discern no such ambiguity. Under Subsection 310.73(a), licensees are free to accept commissions and other compensation "for selling, soliciting or negotiating a contract of insurance." 40 P.S. § 310.73(a). But, when it comes to fees charged "to a person," the Act only allows licensees to charge fees "for the sale, solicitation or negotiation of a contract of insurance *for commercial business*." 40 P.S. § 310.74(a) (emphasis added).

Woodford and Options claim that Subsection 310.74(a) is ambiguous because it is silent as to whether these additional fees can be charged in non-commercial (*i.e.*, consumer) transactions. But the Act is a comprehensive regulatory scheme that clearly begins with the assumption that insurance producers can do nothing, and then proceeds to authorize only certain activities. Given this structure, we should assume that any practices the General Assembly did not explicitly authorize were intentionally disallowed.

To hold otherwise would needlessly inject ambiguity throughout the Act. For example, Subsection 310.73(b)(2) says that a person may accept referral fees "provided they do not discuss specific terms and conditions of a contract of insurance[.]" 40 P.S. § 310.73(b)(2). Does that mean that the statute is silent as to whether a person can collect referral fees when that person discusses specific terms and conditions of the insurance contract? Of course not. Though the General Assembly's silence sometimes can create ambiguity, the silence here is pregnant. In a regulatory statute that

---

[3]     *See* Brief for Woodford at 18-21; Brief for Department at 18-25.

affirmatively permits certain practices, courts generally should assume that anything not mentioned deliberately was omitted.[4]

The second sentence of Subsection 310.74(a) also teaches us that the statute prohibits producers from charging extra fees in consumer transactions. After stating that producers can charge fees in commercial transactions, Subsection 310.74(a) then goes on to say that "[t]he fee charged by the licensee" (meaning the fee charged in a commercial transaction) "shall be disclosed in advance in writing to the person and shall be reasonable in relationship to the services provided." 40 P.S. § 310.74(a). But, if one accepts Woodford and Options' argument that Subsection 310.74(a) simply authorizes fees in commercial transactions—but does not prohibit them in consumer transactions— then producers presumably could charge unreasonable and undisclosed fees to consumers. It beggars belief to suggest that the General Assembly would limit the fees that producers can charge in commercial transactions, while leaving fees charged to consumers entirely unregulated.

The Insurance Commissioner's rationale here for finding Subsection 310.74(a) ambiguous was especially unconvincing. The Commissioner concluded that the provision is unclear regarding whether producers can charge additional fees to consumers given that the Insurance Department's own witness "confirmed that the Department was investigating other agencies, in addition to Options, which also charged additional fees in personal insurance transactions."[5] In the Commissioner's view, the existence of these

---

[4]     *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (1st ed. 2012) ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered.").

[5]     Ins. Comm'r Decision, 6/21/2018, at 18.

investigations "confirms that the provision is open to more than one interpretation."[6] The Commissioner errs. A statute is not ambiguous simply because it has been violated; people break unambiguous laws every day. Some insurance agencies might have decided to collect additional fees from consumers because they were unaware of Subsection 310.74(a), others because they unreasonably interpreted Subsection 310.74(a), and still others because they suspected that the Department would not enforce Subsection 310.74(a). Whatever the reason, the Commissioner's violation-ergo-ambiguity analysis is a non-starter.

Because Subsection 310.74(a) is unambiguous, issues concerning the Commonwealth Court's deference to the Insurance Department's interpretation of the Act are entirely moot.[7] Although the narrow approach to administrative deference that Justice Donohue advances in her thoughtful concurrence aligns in most respects with my own well-documented views[8] on the subject, the lack of ambiguity in Subsection 310.74(a) precludes me from reaching the issue today.

---

[6]     *Id.*

[7]     *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

[8]     *See*, *e.g.*, *Harmon v. Unemployment Comp. Board of Rev.*, 207 A.3d 292, 310 (Pa. 2019) (Wecht, J., concurring) ("As I have explained in the past, I do not agree that reviewing courts should afford what often amounts to unqualified deference—*i.e.*, *Chevron* deference—to an executive-branch agency's interpretation of an ambiguous statute." (footnote omitted)); *County of Butler v. CenturyLink Commc'n, LLC*, 207 A.3d 838, 854 (Pa. 2019) (Wecht, J., concurring) (rejecting the notion that courts should defer to an interpretation that an agency develops in the course of litigation); *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1083 (Pa. 2018) (Wecht, J., concurring) ("In cases involving ambiguous statutory language, the interpretation suggested by an agency charged with administering the statute may be considered, but the meaning of a statute is essentially a question of law for the court."); *see also Crown Castle NG East LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 686 (Pa. 2020) (Wecht, J., concurring) (expressing

In sum, Subsection 310.74(a) is unambiguous. Under Woodford and Options' interpretation, a statute that says producers can charge additional fees in commercial transactions somehow is unclear regarding whether producers can charge additional fees in all transactions, including non-commercial ones. It is not. Under Subsection 310.74(a), "commercial business" plainly means *only* commercial business. I discern no ambiguity in Subsection 310.74(a), and I accordingly concur in today's result.

Justice Donohue joins this concurring opinion.

---

"deep and broad misgivings" about this Court's administrative deference jurisprudence); *SEDA-COG Joint Rail Auth. v. Carload Express, Inc.*, ___ A.3d ___, 2020 WL 5823494, at *15 (Pa. 2020) (Wecht, J., concurring) (same).